OPINION
Defendant-appellant/cross-appellee, Marie Keeley, appeals an order of the Clermont County Court of Common Pleas, Domestic Relations Division, granting the motion to terminate spousal support paid by plaintiff-appellee/cross-appellant, Michael Keeley.
The parties were granted a divorce on June 3, 1996. Pursuant to the divorce decree, Michael was ordered to pay Marie $200 per month in spousal support "for three (3) years or until such times as [Marie] dies, remarries, or cohabitates [sic] with an unrelated adult male, whichever occurs first." The trial court expressly reserved jurisdiction to modify or terminate the spousal support award. On March 22, 1999, Michael filed a motion to terminate spousal support on the ground that Marie had been cohabiting with a Robert Holton. Michael's motion also asked that Marie be found in contempt for failing to notify the trial court of the occurrence of an event which would have terminated the spousal support order, to wit: her cohabitation with Holton.
On April 6, 1999, a hearing was held before a magistrate. By decision filed April 16, 1999, the magistrate found no cohabitation between Marie and Holton and denied Michael's motion to terminate spousal support. The magistrate also found that Marie was under no statutory obligation "to notify [the court] of a change in her circumstances such as would terminate spousal support." Michael filed objections to the magistrate's decision and on June 29, 1999, the trial court filed an entry overruling the magistrate's decision in part. The trial court found that Marie and Holton had cohabited and granted Michael's motion to terminate spousal support retroactive to July 1, 1996. The trial court agreed with the magistrate that Marie was not in contempt for failing to notify the court of the occurrence of an event which would have terminated the spousal support order. Marie appealed, raising two assignments of error. Michael cross-appealed, raising one assignment of error.
In her first assignment of error, Marie argues that the trial court erred by finding she and Holton had cohabited, thereby warranting the termination of spousal support. In her second assignment of error, Marie argues that the trial court erred by terminating spousal support retroactive to July 1, 1996 rather than to March 22, 1999, the day Michael filed his motion to terminate spousal support.
Under proper circumstances, cohabitation can constitute grounds for the termination of spousal support awards. Thomas v.Thomas (1991), 76 Ohio App.3d 482, 485. The term "cohabitation" contemplates a relationship that approximates or is the functional equivalent of a marriage. Piscione v. Piscione (1992), 85 Ohio App.3d 273,275. Cohabitation in the context of a divorce decree is used as a substitute for remarriage to prevent the recipient spouse from eluding termination of spousal support. Moell v.Moell (1994), 98 Ohio App.3d 748, 751-752.
"[T]he essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. * * * Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." State v. Williams (1997),79 Ohio St.3d 459, 465. Thus, "cohabitation requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the [recipient] spouse and the paramour so as to be the functional equivalent of a marriage." Barrett v. Barrett (June 10, 1996), Butler App. No. CA95-06-110, unreported, at 21.
Cohabitation is a question of fact that is best determined by the trial court on a case-by-case basis. Moell,98 Ohio App.3d at 752. An appellate court will not overturn the judgment of a trial court with respect to a determination of cohabitation if it is supported by some competent, credible evidence going to all the essential elements of the case. Piscione, 85 Ohio App.3d at 276.
Testimony at the hearing before the magistrate established that Holton, Marie, and William Anderson, Marie's father, lived together in an Amelia, Ohio house which was purchased jointly by Holton and Anderson three days before the parties' June 3, 1996 divorce decree. Anderson made a $10,000 down payment while Holton made a $7,000 down payment. Thereafter, Holton and Anderson each paid half of the mortgage payments. In addition, Holton paid the household utility bills while Marie bought the groceries and paid for the telephone bill. Holton testified he paid the utility bills to make up for the $3,000 down payment difference between Holton and Anderson. Holton and Marie did not otherwise share expenses or financial resources. They also each had their own separate bank accounts and credit cards. By survivorship deed dated June 10, 1998, the house was transferred to Holton and Marie as joint tenants with rights of survivorship. Holton continued to pay the mortgage until he moved out of the house in August 1998. Since then, Marie has been responsible for the mortgage payments.
Both Holton and Marie testified they lived in the house, along with Anderson, from June 3, 1996 on. All three had their own separate sleeping quarters. During the two-year period they both lived in the house, Holton and Marie had a very close, affectionate, and sexual relationship. Marie's brother testified that Holton and Marie were always together and that "when you saw one, you saw both." Holton moved out of the house in August 1998 because he "wasn't in love" with Marie anymore.
After carefully reviewing the record, we find that the trial court's decision finding cohabitation between Holton and Marie and overruling in that regard the magistrate's decision is supported by competent, credible evidence. Not only did Marie and Holton have a sexual relationship, they also shared financial responsibilities by sharing provisions for shelter, food, and utilities, and by eventually jointly owning the house they lived in. We thus find that under the two-prong test of Williams, Holton and Marie were engaged in a relationship which was the functional equivalent of a marriage. As a result, the trial court properly granted Michael's motion to terminate spousal support.
Marie contends that the trial court's retroactive order to terminate spousal support to July 1, 1996 is erroneous and unfair as the date upon which her alleged cohabitation with Holton began cannot be determined with any degree of certainty. As a result, Marie contends that the termination of spousal support should be retroactive to the filing date of Michael's motion. By then, Holton and Marie no longer had a sexual relationship and were no longer residing in the same house.
When cohabitation is established, the obligation to pay spousal support can be properly terminated even if the relationship between the recipient spouse and the paramour comes to an end prior to the end of the period within which the former spouse is required to pay spousal support under the terms of the divorce decree. Perri v. Perri (1992), 79 Ohio App.3d 845, 852. Thus, termination of cohabitation neither revives a spousal support obligation, nor results in the continuation of support.
"After a trial court has reserved jurisdiction to modify or terminate a temporary [spousal support] award, it has broad discretion to do so." Thomas, 76 Ohio App.3d at 487. "A retroactive order terminating support upon cohabitation is permissible when the * * * divorce decree provides that support shall terminate upon cohabitation." Jennings v. Jennings (Oct. 26, 1995), 1995 Ohio App. LEXIS 4724, at *5, Cuyahoga App. No. 68782, unreported. A retroactive order was appropriate in the case at bar as the parties clearly agreed in the divorce decree that spousal support would terminate upon cohabitation.
We agree with the trial court that "[a]lthough the record is unclear as to the exact date that the cohabitation began, there is no question that [Marie] and Mr. Holton were cohabiting, at the latest, by July 1, 1996." Holton testified that as of June 3, 1996, he and Marie were dating. Both Marie and Holton testified that they lived together in the house, along with Anderson, from June 3, 1996 on. We therefore find that the trial court did not err in granting Michael's motion to terminate spousal support retroactive to July 1, 1996. Marie's first and second assignments of error are overruled.
In his cross-assignment of error, Michael argues that the trial court erred by not finding Marie in contempt for failing to notify the court of her cohabitation with Holton.
Both the magistrate and the trial court found that R.C.3113.21(G) does not place a duty on a recipient spouse receiving spousal support payments to notify the Child Support Enforcement Agency (CSEA) of the occurrence of an event which would terminate spousal support. Both the magistrate and the trial court found that the statutory provision solely applied to recipients of child support.
R.C. 3113.21 governs withholding and deduction from wages and assets to pay support. R.C. 3113.21(G) provides in relevant part that:
 (2) Each party to a support order shall notify the child support enforcement agency of * * * any change in either [the mailing or residence] address immediately after the change occurs. Any willful failure to comply with this division is contempt of court. * * *
 (4)(a) The parent who is the residential parent and legal custodian of a child for whom a support order is issued * * * shall notify * * * the child support enforcement agency of any reason for which the support order should terminate, including, but not limited to, death, marriage, emancipation, enlistment in the armed services, deportation, or change of legal or physical custody of the child.
We agree with the trial court that R.C. 3113.21 only applies to recipients of child support and thus, does not require Marie to notify the court or CSEA of a change in her circumstances which would terminate spousal support. Although CSEA collects both spousal support and child support, the general mission of CSEA is to provide various services to any child with an absent parent, for the purpose of locating the parent, establishing a support obligation in regard to the child, and collecting the support on a reliable basis. R.C. 2301.35(C); OAC 5101:1-29-01. While R.C.3113.21(G)(2) broadly refers to any party to a support order, R.C.3113.21(G)(4) specifically refers to the custodial parent in requiring such parent to notify the CSEA of any reason for which the support order should terminate. R.C. 3113.21(G) thus does not apply to Marie.
Michael argues, however, that Marie should nevertheless have been found in contempt for giving false testimony in November 1996 with regard to her address. Marie then testified that her address was in Cincinnati. At the time of her November 1996 testimony, Marie was already living in Amelia with her father and Holton.
It is rudimentary that questions neither raised in nor passed upon the trial court will not be ruled upon by this court. Moatsv. Metropolitan Bank of Lima (1974), 40 Ohio St.2d 47, 49-50. While Michael's motion to terminate spousal support asked that Marie be found in contempt for failing to notify the court of her cohabitation with Holton, it never raised the issue of her alleged false testimony in November 1996. We will therefore not address it. For the same reason, we will not address the issues of whether justice requires a finding of contempt where the obligee conceals cohabitation by giving false testimony, or whether public policy requires a spousal support obligee to notify CSEA when spousal support should stop.
We therefore find that the trial court did not err by not finding Marie in contempt for failing to notify the court of her cohabitation with Holton. Michael's cross-assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.